[No. S088091. July 5, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
LINDA JEAN MASLOSKI, Defendant and Appellant.

## Counsel

Ivy K. Kessel for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Steven D. Matthews, Brad D. Levenson, Pamela C. Hamanaka and Susan Sullivan Pithey, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**GEORGE, C. J.**—The issue in this case is whether a plea agreement may provide for an increased sentence in the event the defendant fails to appear for sentencing. We conclude that a plea agreement properly may contain such a provision.

### Facts

Defendant Linda Jean Masloski was charged by information with possession of cocaine in violation of Health and Safety Code section 11350, subdivision (a). The information further alleged that defendant had suffered three prior convictions for burglary (Pen. Code, § 459),[1] a "serious felony" within the meaning of the "Three Strikes" law. (§§ 667, subds. (b)-(i), 1170.12.)

Following a hearing conducted pursuant to *People v. Romero* (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628], the court struck two of defendant's three alleged prior convictions. At a subsequent hearing, the court noted that a plea agreement had been negotiated:

"THE COURT: . . . I have had a conversation with counsel. I understand that the defendant is willing to plead to the charge and admit the one prior strike conviction. [¶] The promise is that defendant would be sentenced to the low term of 16 months. It would be doubled to two years and eight

---

[1] All further statutory references are to the Penal Code.

months [pursuant to the Three Strikes law]. I would take what is known as a *Cruz* waive[r[2]] and set sentencing for two weeks. And I'll explain on the record what a *Cruz* waiver is. Is this the understanding that you have, [defense counsel]?

"[DEFENSE COUNSEL]: Yes, your Honor. . . . [¶] . . . [¶]

"THE COURT: Is this the understanding of the plea bargain by the People?

"[PROSECUTOR]: Yes . . . .

"THE COURT: Ms. Masloski, is this what you wish to do?

"THE DEFENDANT: Yes, your Honor.

"THE COURT: All right. Now I'm about to take what is known as a *Cruz* waiver. What a *Cruz* waiver is, I make sure that you show up on the date of sentencing. What I want is your permission that we enter into a contract. [¶] What this means is that you show up on time and I will follow the plea bargain. If you are late, or heaven forbid, you don't show up at all, then I want your permission to treat this as an open plea which means I am not bound by the low term doubled, that I can give you as much as six years in state prison if the facts warrant it. [¶] Do you understand now what this contract is?

"THE DEFENDANT: Yes.

"THE COURT: Are you willing to engage and enter into this contract?

"THE DEFENDANT: Yes.

"THE COURT: Do we have a contract?

"THE DEFENDANT: Yes.

"THE COURT: Done."

The court then advised defendant of her constitutional rights, obtained her waiver of those rights, and accepted her plea of no contest. The case was continued for sentencing until July 8, 1999.

---

[2]In *People v. Cruz* (1988) 44 Cal.3d 1247 [246 Cal.Rptr. 1, 752 P.2d 439], we interpreted the provision of section 1192.5 that permits a defendant who pleads guilty or nolo contendere pursuant to a plea agreement to withdraw the plea if the agreement subsequently is disapproved by the court. We held that this provision applies even if the defendant fails to appear for sentencing. We noted in a footnote, however, that a defendant could expressly waive his or her rights under section 1192.5 at the time the plea was entered. (*People v. Cruz, supra,* 44 Cal.3d at p. 1254, fn. 5.)

Defendant appeared on July 8, but requested and was granted a continuance to July 19, 1999. Defendant failed to appear on July 19, but did appear the following day, July 20. When asked by the court where defendant was on July 19, defense counsel said he understood defendant "was initially out of town," adding that she "was scared." Defense counsel asked the court to impose the lower term that would have been provided under the plea agreement had defendant appeared on July 19 as ordered by the court.[3] The court declined to do so, instead sentencing defendant to the middle term of two years, which was doubled pursuant to the Three Strikes law to four years in prison.

On July 27, 1999, defendant filed a motion to recall and modify the four-year state prison sentence and resentence defendant to the lower term provided under the plea agreement, alleging that defendant had not been fully advised of her rights under section 1192.5 and had not expressly waived those rights. The court denied the motion on the ground that "there is no violation of the plea bargain."

Defendant appealed. The Court of Appeal, in a split decision, reversed the judgment and remanded the case to the superior court with directions to permit defendant to withdraw her guilty plea if she elects to do so.

### DISCUSSION

██ We often have noted that plea agreements are a recognized procedure under our judicial system (*People v. Orin* (1975) 13 Cal.3d 937, 942 [120 Cal.Rptr. 65, 533 P.2d 193]; *People v. West* (1970) 3 Cal.3d 595, 604 [91 Cal.Rptr. 385, 477 P.2d 409]) and a desirable and essential component of the administration of justice. (*In re Alvernaz* (1992) 2 Cal.4th 924, 933 [8 Cal.Rptr.2d 713, 830 P.2d 747]; *People v. Cruz, supra,* 44 Cal.3d 1247; *People v. Mancheno* (1982) 32 Cal.3d 855, 859-860 [187 Cal.Rptr. 441, 654 P.2d 211]; *In re Hawley* (1967) 67 Cal.2d 824, 828 [63 Cal.Rptr. 831, 433 P.2d 919].) Commentators are in accord, noting that "[b]oth the state and the defendant benefit from plea bargains, the defendant by lessened punishment, the state by savings in cost of trial, increased efficiency, and flexibility of the criminal process." (4 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Pretrial Proceedings, § 304, p. 523.) Additionally, the enactment of sections 1192.3 and 1192.5, governing plea agreements, reflects the Legislature's approval of the practice.

---

[3]Contrary to the assertion of defendant's counsel at oral argument, defendant did not move to withdraw her plea of no contest. In fact, defendant made it clear in her subsequent motion to recall the sentence pursuant to section 1170, subdivision (d), that, although she believed she had the right to withdraw her plea, she wished only "to get the benefit of her original bargain."

Under section 1192.5, if a plea agreement is accepted by the prosecution and approved by the court, the defendant "cannot be sentenced on the plea to a punishment more severe than that specified in the plea . . . ." The statute further provides that if the court subsequently withdraws its approval of the plea agreement, "the defendant shall be permitted to withdraw his or her plea if he or she desires to do so."[4] (§ 1192.5; *People v. Johnson* (1974) 10 Cal.3d 868, 872 [112 Cal.Rptr. 556, 519 P.2d 604].)

In *People v. Cruz, supra,* 44 Cal.3d 1247, 1249, we held that a defendant who fails to appear for sentencing does not lose the protections of section 1192.5. The defendant in that case pleaded guilty pursuant to a plea agreement that gave him the option of a sentence of up to one year in the county jail with a maximum of five years' probation or 16 months in prison without probation. The defendant failed to appear for sentencing. When he was apprehended more than six months later, the superior court refused to abide by the plea agreement, denied the defendant's motion to withdraw his plea, and sentenced him to a term of two years in prison. The Court of Appeal affirmed the resulting judgment, concluding that by failing to appear for sentencing, the defendant " 'breached the bargain . . . [and] is not entitled to either specific enforcement of that bargain or withdrawal of his guilty plea.' " (*People v. Cruz, supra,* 44 Cal.3d at p. 1250, fn. omitted.) We granted review and reversed the judgment of the Court of Appeal, relying upon a line of Court of Appeal opinions that began with *People v. Morris* (1979) 97 Cal.App.3d 358 [158 Cal.Rptr. 722].

In *People v. Morris,* pursuant to a plea agreement, the defendant pleaded guilty to two counts of aggravated assault in exchange for the dismissal of the three remaining counts of aggravated assault and a promise that a prison term would not be imposed. Defense counsel noted that the court had agreed to release the defendant on his own recognizance pending sentencing. The court stated that, in order to ensure that defendants who had been released on their own recognizance appeared for sentencing, it had adopted a practice of sentencing such defendants to prison but staying execution of the sentence until the date set for formal sentencing. As the court explained to the defendant: " 'That way, you see, I don't have to get the O.R. people to

---

[4] Section 1192.5 provides, in relevant part: "Where the plea is accepted by the prosecuting attorney in open court and is approved by the court, the defendant, except as otherwise provided in this section, cannot be sentenced on the plea to a punishment more severe than that specified in the plea and the court may not proceed as to the plea other than as specified in the plea. [¶] If the court approves of the plea, it shall inform the defendant prior to the making of the plea that (1) its approval is not binding, (2) it may, at the time set for the hearing on the application for probation or pronouncement of judgment, withdraw its approval in the light of further consideration of the matter, and (3) in that case, the defendant shall be permitted to withdraw his or her plea if he or she desires to do so."

interview you and all that. All I do is say if you come back, we'll do what the probation report recommends and what I decide is appropriate on those two counts. But if you don't come back, a warrant will go out, you'll go to State Prison. And that means you're sure to come back, right?' " (*People v. Morris, supra,* 97 Cal.App.3d at p. 361, fn. 1.)

The defendant agreed to this arrangement, entered his plea, and was sentenced to prison. Execution of the sentence was stayed, and the defendant was released on his own recognizance until the date set for sentencing. The court reiterated that if the defendant appeared for sentencing, " 'I will rescind the State Prison sentence and proceed in accordance with the plea bargain. If he doesn't appear, I'll leave the State Prison sentence outstanding and issue a warrant and send everybody out to find him.' " (*People v. Morris, supra,* 97 Cal.App.3d 358, 361, fn. 3, italics omitted.) The defendant failed to appear for sentencing and was apprehended two months later. The superior court denied the defendant's motion to withdraw his plea and remanded him to begin serving the previously imposed prison sentence.

The Court of Appeal in *Morris* reversed, concluding that the superior court lacked the authority to impose "such an unusual sentencing-release procedure" and that the lower court's authority to approve the terms of the plea agreement "did not sanction the wholly unrelated and unbargained condition interjected by the court concerning defendant's candidacy for immediate O.R. release pending contemplated formal sentencing proceedings." (*People v. Morris, supra,* 97 Cal.App.3d 358, 363.) The court in *Morris* concluded that the defendant was entitled under section 1192.5 to withdraw his plea in the event the terms of the plea agreement were not enforced.

Similarly, in *People v. Barrero* (1985) 163 Cal.App.3d 1080 [210 Cal.Rptr. 70], the defendant pleaded guilty to felony joyriding pursuant to an agreement that he would receive a sentence of 16 months in prison. The defendant was told that if he failed to report to the probation department or failed to appear for sentencing, he " 'would receive either two or three years in prison, but he would not be allowed to back out of the plea bargain.' " (*Id.* at p. 1082.) Defendant failed to report to the probation department and failed to appear for sentencing. After being apprehended, he was sentenced to three years in prison. Relying upon the decision in *People v. Morris, supra,* 97 Cal.App.3d 358, the Court of Appeal reversed, rejecting the People's argument that *Morris* was distinguishable because Barrero had "bargained away his right to withdraw his guilty plea." (*People v. Barrero, supra,* 163 Cal.App.3d at p. 1085.) In the court's view, the sanction for nonappearance had been " 'engrafted' " upon the terms of the negotiated plea agreement and was ineffective. (*Ibid.*) As we observed in *Cruz,* because Barrero, like

Morris, had not been advised of his right to withdraw his plea under section 1192.5 if the plea agreement was disapproved, "he could not be deemed to have bargained away his right to withdraw his guilty plea. [Citation.]" (*People v. Cruz, supra*, 44 Cal.3d 1247, 1252.)

Following the decision in *Morris*, we held in *Cruz* that a defendant who fails to appear for sentencing does not breach the terms of the plea agreement, but commits "a separate offense of failure to appear. (See §§ 1320 and 1320.5.)" (*People v. Cruz, supra*, 44 Cal.3d 1247, 1253.) ■ Accordingly, we held, as noted above, that a defendant who fails to appear for sentencing does not lose the protections of section 1192.5. In a footnote, we added the following caveat: "We do not mean to imply by this holding that a defendant fully advised of his or her rights under section 1192.5 may not expressly waive those rights, such that if the defendant willfully fails to appear for sentencing the trial court may withdraw its approval of the defendant's plea and impose a sentence in excess of the bargained-for term. Any such waiver, of course, would have to be obtained at the time of the trial court's initial acceptance of the plea, and it must be knowing and intelligent." (*People v. Cruz, supra*, 44 Cal.3d at p. 1254, fn. 5.)

In *People v. Vargas* (1990) 223 Cal.App.3d 1107 [273 Cal.Rptr. 48], the Court of Appeal distinguished our decision in *Cruz* and held that a plea agreement validly could provide for a specified greater term to be imposed in the event the defendant failed to appear for sentencing, and to a specified lesser term if the defendant did appear. Vargas pleaded guilty to two counts of possession of controlled substances pursuant to a plea agreement that called for a total sentence of two years in prison if he appeared for sentencing but a total term of five years in prison if he failed to appear for sentencing. The prosecutor described this arrangement as " 'a negotiated disposition agreed upon by both sides solely to allow [the defendant] to remain free till the probation and sentence date . . . .' " (*People v. Vargas, supra*, 223 Cal.App.3d at p. 1109, fn. 1.) The defendant and defense counsel confirmed that this was their understanding of the terms of the plea agreement, but defendant was not advised of his right under section 1192.5 to withdraw his plea if the court subsequently withdrew its approval of the plea agreement. The defendant failed to appear for sentencing and was apprehended 14 months later. The court denied the defendant's motion to withdraw his plea and sentenced him to a total term of five years in prison.

The Court of Appeal affirmed the resulting judgment, rejecting the defendant's contention that the sentence violated section 1192.5 as construed in *Cruz*. The court in *Vargas* distinguished "the *Morris* line of cases and *Cruz*" on the basis that the superior court in *Vargas* "did not seek to repudiate the

plea bargain or to impose a sentence more onerous than that which defendant had agreed to accept as part of the bargain itself." (*People v. Vargas, supra,* 223 Cal.App.3d 1107, 1113.) The provisions of section 1192.5 did not apply because " 'the court didn't change the bargain.' " (*People v. Vargas,* 223 Cal.App.3d at p. 1113.) In so holding, the court in *Vargas* relied upon the decision in *People v. Jackson* (1980) 103 Cal.App.3d 635 [163 Cal.Rptr. 115].

In *Jackson,* the defendant pleaded guilty to second degree burglary pursuant to a plea agreement in which the People promised to move for the dismissal of a second count of burglary and "not oppose reduction to a misdemeanor at time of sentencing if no prior record. Six months maximum." (*People v. Jackson, supra,* 103 Cal.App.3d 635, 637.) The trial court approved the plea agreement, taking care to explain to the defendant that the proposed sentence was conditioned upon his having no prior record. The defendant said he understood. After the probation report subsequently revealed that the defendant had an extensive prior criminal record, the court sentenced him to a term of three years in prison.

The Court of Appeal in *Jackson* affirmed the resulting judgment, rejecting the defendant's argument that he should have been permitted to withdraw his plea and reasoning that section 1192.5 applies only if "the court makes a unilateral modification in the sentence agreed upon at the time of plea." (*People v. Jackson, supra,* 103 Cal.App.3d 635, 638.) The court explained: "Here, the court didn't change the bargain. The express agreement required a misdemeanor sentence only upon the condition of defendant having a clean record. If that condition were not met, neither the bargain nor the statute gave defendant the right to withdraw his plea." (*Ibid.*)

The distinction drawn in *People v. Vargas, supra,* 223 Cal.App.3d 1107, between (1) a plea *agreement* that provides alternate sentences depending upon whether the defendant does or does not appear for sentencing as ordered, and (2) a sanction for nonappearance that is *unilaterally* imposed by the trial court, was recognized in *People v. Jensen* (1992) 4 Cal.App.4th 978 [6 Cal.Rptr.2d 201]. The defendant in *Jensen* pleaded guilty to a charge of possession of a concealable firearm by a felon, pursuant to a plea agreement that included a term of one year in county jail. After defense counsel recited the terms of the plea agreement to the court, he requested a "stay of execution," indicating he understood the court's policy of ensuring a defendant's appearance by sentencing him or her to a term of two years in state prison and staying execution of that sentence pending the defendant's appearance for sentencing. Defendant failed to appear for sentencing. When he was apprehended, the court ordered execution of the two-year prison sentence and denied the defendant's motion to withdraw his plea.

The Court of Appeal reversed, concluding that "the trial court maintained a return policy similar to those criticized in the *Morris* line of cases and sentenced appellant pursuant to such policy rather than the plea bargain agreement reached between appellant and the district attorney." (*People v. Jensen, supra,* 4 Cal.App.4th 978, 982.) Significantly, the court concluded "that the return provision was not a valid part of appellant's plea bargain." (*Id.* at p. 984.)

Similarly, the court in *People v. Murray* (1995) 32 Cal.App.4th 1539 [39 Cal.Rptr.2d 7], found a nonappearance sanction invalid because it was not part of the plea agreement. Murray pleaded guilty to two counts of residential burglary based upon an agreement that he would be sentenced to no more than four years in prison. After reciting the terms of the plea agreement on the record and obtaining the defendant's waiver of his constitutional rights, the court indicated it would grant the defendant's " 'request for a two-week hiatus before he turned himself in,' " on the condition that if he failed to appear the court would not be bound by the four-year maximum sentence. (*Id.* at p. 1542.) The defendant failed to appear. When he was apprehended, the court sentenced the defendant to a total term of six years and four months in prison.

The court in *Murray* distinguished the decision in *Vargas, supra,* 223 Cal.App.3d 1107, on the basis that, unlike the trial court's action in *Vargas,* "the plea bargain itself did not contemplate a sentence higher than the four-year middle term." (*People v. Murray, supra,* 32 Cal.App.4th 1539, 1545.) The sanction for nonappearance was imposed by the court "separate and apart from the plea bargain." (*Ibid.*)

*People v. Casillas* (1997) 60 Cal.App.4th 445 [70 Cal.Rptr.2d 290], presented a situation analogous to that in *Vargas.* Casillas pleaded no contest to possession of methamphetamine pursuant to a plea agreement under which, with the following conditions, he would be placed on felony probation and serve 90 days in county jail. The agreement provided that the defendant would be released on his own recognizance pending sentencing, but if he failed to appear for sentencing, the maximum sentence would be increased to three years in prison. The defendant failed to appear and later was apprehended. The superior court denied the defendant's motion to withdraw his plea and sentenced him to three years in prison.

The Court of Appeal in *Casillas* examined the authorities discussed above and distilled the following principles: "First, when a defendant fails to appear at sentencing after entering a bargained plea with no discussion about

a specific sanction for nonappearance, he or she is entitled to withdraw the plea if the court refuses to honor the plea bargain. Second, the same rule applies when, during the plea proceedings but after the parties have negotiated the basic plea bargain, the court imposes an additional condition providing a sanction for nonappearance. Third, when the parties themselves agree as part of the plea bargain to a specific sanction for nonappearance, the court need not permit the defendant to withdraw his or her plea but may invoke the bargained-for sanction." (*People v. Casillas, supra,* 60 Cal.App.4th 445, 451-452.)

The appellate court in *Casillas* concluded that "the return provision was a valid part of the plea agreement itself and, therefore, enforceable without regard to section 1192.5." (*People v. Casillas, supra,* 60 Cal.App.4th 445, 453.) The court observed that the plea agreement at issue differed from the agreement involved in *Vargas,* "because Casillas did not agree 'to a *specific* greater term to be imposed if he should fail to appear for sentencing,'" but found this difference "insignificant." (*Id.* at p. 452, italics added.) The court also found insignificant the circumstance that the plea agreement did not specify a greater term of imprisonment as in *Vargas* but, rather, provided for an increase in the maximum possible prison term in the event the defendant failed to appear. The court in *Casillas* stated: "We see no reason why the parties should not be free to negotiate a lesser sanction for nonappearance than imposition of a specific greater sentence. Indeed, such a lesser sanction preserves the panoply of procedural protections and rights for the sentencing hearing." (*People v. Casillas, supra,* 60 Cal.App.4th at p. 452.)

Defendant does not challenge the validity of the decisions in *Vargas* and *Casillas,* but asserts that they do not apply to the circumstances of the present case. Defendant argues that here the provision for an increased sentence in the event she were to fail to appear for sentencing was not part of the plea agreement, but was imposed by the trial court as part of a separate "contract." We disagree.

At the outset of the hearing on the plea agreement in the present case, the trial court carefully described the terms of the agreement, which included what the court referred to as a "*Cruz* waiver." The court later explained that a "*Cruz* waiver" signified that defendant could receive an increased sentence of up to six years in prison in the event she failed to appear for sentencing. Defense counsel, the prosecutor, and defendant each personally confirmed that this was his or her understanding of the terms of the agreement. In addressing the prosecutor, the court asked: "Is this the understanding *of the plea bargain* by the People?" (Italics added.) As in *Casillas,* "[t]he relevant transcript leaves no doubt a plea agreement already had been negotiated off

the record" and that the agreement included a provision for an increased sentence in the event defendant failed to appear for sentencing. (*People v. Casillas, supra,* 60 Cal.App.4th 445, 453.)

Having confirmed the terms of the plea agreement, including the provision for an increased sentence in the event defendant failed to appear, the court turned its attention to defendant and explained in detail the aspect of the agreement providing that she could receive an increased sentence upon failing to appear for sentencing. The court then obtained defendant's assurance that she understood and agreed to this arrangement. Although the court used the term "contract" in referring to this part of the agreement, we do not accept defendant's contention that the use of this terminology signified that the "*Cruz* waiver" was not part of the plea agreement. The court apparently used this term, which is familiar to laypersons, to impress upon defendant the importance of this aspect of the agreement and the circumstance that her nonappearance would have serious consequences.

The decision in *Vargas* observed that the holding in *Cruz,* and the cases upon which it relied, "serve the objective that plea bargains ' "implement the reasonable expectations of the parties . . . ." ' " (*People v. Vargas, supra,* 223 Cal.App.3d 1107, 1112.) The court went on to state: "That expectation was served in this case. Here, unlike the *Morris* line of cases and *Cruz,* the trial court did not seek to repudiate the plea bargain or to impose a sentence more onerous than that which defendant had agreed to accept as part of the bargain itself. The plea bargain specified the sentence defendant was to receive: two years if he appeared at the sentencing hearing, and five years if he did not. [¶] Neither defendant, his attorney, nor anyone else involved in the plea bargain could have had any reasonable expectation other than that the bargained-for term of five years would be imposed if defendant failed to appear at the sentencing hearing." (*Id.* at p. 1113, fn. omitted.) The same is true in the present case. The trial court listed the "*Cruz* waiver" as one of the terms of the plea agreement, and defendant clearly understood that part of the agreement was that her sentence could be increased in the event she failed to appear for sentencing. The provision for an increased sentence upon defendant's nonappearance was part of the plea agreement and not "a judicially imposed afterthought." (*People v. Casillas, supra,* 60 Cal.App.4th 445, 452.)

Defendant is correct that the superior court, when it accepted defendant's plea of no contest, failed to advise her as required by section 1192.5 of her right to withdraw her plea in the event the court subsequently disapproved the plea agreement. But this error was of no consequence, because the superior court did not disapprove the plea agreement. Rather, when defendant failed to appear on the date set for sentencing, she was sentenced to a

term of four years in prison, in accordance with the terms of the plea agreement. The provisions of section 1192.5 that permit a defendant to withdraw his or her plea if the court withdraws its approval of the plea agreement were not implicated, because the court adhered to the terms of the plea agreement by sentencing defendant to a prison term that did not exceed (and in fact was less than) the maximum sentence authorized by the plea agreement in the event that defendant failed to appear on the date set for sentencing.

## DISPOSITION

The judgment of the Court of Appeal is reversed.

Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.